**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OMAR ABREU, | : | |
| | : | Civil Action No. 11-0933 (RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| (DOCTOR) MR. GOSTKOWSKI, | : | |
| | : | |
| Defendant. | : | |

**APPEARANCES:**

Plaintiff <u>pro se</u>
Omar Abreu
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640


**BUMB**, District Judge

    Plaintiff Omar Abreu is a federal prisoner serving a 246-month sentence upon conviction of racketeering and related offenses.  See <u>United States v. Abreu</u>, Criminal No. 00-0732 (S.D.N.Y.).  Currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, he seeks to bring this action <u>in forma pauperis</u> pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed

in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, and its attachments, and are accepted as true for purposes of this review.

Plaintiff alleges that his knee was operated on in October of 2007.  He alleges that, as a result of the operation, and because he has flat feet, a Dr. Patel prescribed "medical shoes." Plaintiff alleges that this footwear is necessary to prevent the condition of his knees from deteriorating.

In 2010, Dr. Gostkowski determined that there was no medical need for the previously prescribed "medical shoes."  Instead, to treat Plaintiff's flat feet, Dr. Gostkowski advised Plaintiff to purchase soft shoes or boots from the commissary and prescribed orthotics.  Plaintiff has been advised that he will be provided replacement orthotics in the future.  Plaintiff alleges that he is in some pain from his condition.

Plaintiff has brought this action seeking an order for the previously-prescribed medical shoes and for monetary compensation for his pain and suffering.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled

to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of

4

>   agreement at some unidentified point does not supply
>   facts adequate to show illegality.  Hence, when
>   allegations of parallel conduct are set out in order to
>   make a § 1 claim, they must be placed in a context that
>   raises a suggestion of a preceding agreement, not
>   merely parallel conduct that could just as well be
>   independent action.
>
>       The need at the pleading stage for allegations
>   plausibly suggesting (not merely consistent with)
>   agreement reflects the threshold requirement of Rule
>   8(a)(2) that the "plain statement" possess enough heft
>   to "sho[w] that the pleader is entitled to relief."  A
>   statement of parallel conduct, even conduct consciously
>   undertaken, needs some setting suggesting the agreement
>   necessary to make out a § 1 claim; without that further
>   circumstance pointing toward a meeting of the minds, an
>   account of a defendant's commercial efforts stays in
>   neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

>   Context matters in notice pleading.  Fair notice under
>   Rule 8(a)(2) depends on the type of case -- some
>   complaints will require at least some factual
>   allegations to make out a "showing that the pleader is
>   entitled to relief, in order to give the defendant fair
>   notice of what the ... claim is and the grounds upon
>   which it rests."  Indeed, taking Twombly and the
>   Court's contemporaneous opinion in Erickson v. Pardus,
>   127 S.Ct. 2197 (2007), together, we understand the
>   Court to instruct that a situation may arise where, at
>   some point, the factual detail in a complaint is so
>   undeveloped that it does not provide a defendant the

>type of notice of claim which is contemplated by
>Rule 8.  Put another way, in light of Twombly, Rule
>8(a)(2) requires a "showing" rather than a blanket
>assertion of an entitlement to relief.  We caution that
>without some factual allegation in the complaint, a
>claimant cannot satisfy the requirement that he or she
>provide not only "fair notice," but also the "grounds"
>on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

>Therefore, after Iqbal, when presented with a
>motion to dismiss for failure to state a claim,
>district courts should conduct a two-part analysis.
>First, the factual and legal elements of a claim should
>be separated.  The District Court must accept all of
>the complaint's well-pleaded facts as true, but may
>disregard any legal conclusions.  Second, a District
>Court must then determine whether the facts alleged in
>the complaint are sufficient to show that the plaintiff
>has a "plausible claim for relief."  In other words, a
>complaint must do more than allege the plaintiff's

> entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  Bivens v. Six Unknown Agents

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due

Process Clause, see Davis v. Passman, 442 U.S. 228 (1979). But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988). Relying upon Bivens, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement. See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980).

IV.  ANALYSIS

A.  Exhaustion of Administrative Remecies

No action may be brought by a prisoner with respect to prison conditions unless the prisoner has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). Specifically, 42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"[T]he ... exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted).

In addition, a prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process. Booth v. Churner, 532 U.S. 731 (2001).

Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; instead, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199 (2007). Nevertheless, a district court has inherent power to dismiss a complaint which facially violates this bar to suit. See, e.g., Bock, 549 U.S. at 214-15 (referring to the affirmative defense of a statute of limitations bar); Lindsay v. Williamson, 271 Fed.Appx. 158, 159-160, 2008 WL 902984, *1 (3d Cir. 2008); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000).

The Third Circuit observed in Nyhuis, however, that an inmate may satisfy § 1997e(a) through substantial compliance. "Without embellishing - for the case law in the area will have to develop - we note our understanding that compliance with the

administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77-8. See also Veteto v. Miller, 794 F.2d 98, 99-100 (3d Cir. 1986) (vacating sua sponte dismissal based upon failure to exhaust BOP's Administrative Remedy Program where prisoner alleged that he had "repeatedly requested administrative remedies" from the defendants with no response or success, and remanding to enable plaintiff "to amend his complaint so as to supply more specific facts on this subject and to enable the court to hold a preliminary hearing, if needed").

    The Bureau of Prisons Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[1] 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred,

---

[1] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[2]  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

    Here, Plaintiff initiated the Federal Bureau of Prisons administrative remedy program.  He timely pursued the first and second levels of administrative remedy, at the level of the Warden and the Regional Director.  The Regional Director's response was dated June 25, 2010, and provided Plaintiff notice that his appeal must be <u>received</u> in the office of the General Counsel within 30 days after the date of the decision.  Plaintiff alleges that he mailed his appeal on July 23, 2010, 28 days after the date of the Regional Director decision, but the appeal was not received in the General Counsel's office until August 19, 2010.  Therefore, Plaintiff's appeal to the General Counsel was

---

    [2] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

11

rejected as untimely, but Plaintiff was granted leave to resubmit the appeal in proper form with staff verification on BOP letterhead documenting that the untimely filing of the appeal was not Plaintiff's fault.  Instead, Plaintiff submitted a new administrative remedy which was rejected at the level of the Warden because it was untimely and the issue had already been addressed.

Plaintiff's attachments to the Complaint reflect that he did not exhaust his administrative remedies, as he did not timely appeal to the office of the General Counsel.  Nor do the attachments reflect substantial compliance, as Plaintiff received timely notice of the 30-day deadline for receipt of the appeal to the General Counsel, yet he waited 28 days to place his appeal into the institutional mail system.  Accordingly, the Complaint will be dismissed with prejudice for failure to satisfy the statutory prerequisite of exhaustion of administrative remedies.

B.   Eighth Amendment Medical-Care Claim

To the extent Plaintiff can demonstrate substantial compliance with the administrative remedy requirement, the Complaint nevertheless fails to state a claim.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v.

12

Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than

13

mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'

14

deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." <u>Id.</u> (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" <u>Id.</u> at 347 (citation omitted).

    Here, no inference of "deliberate indifference" arises from the facts pleaded in his Complaint and its attachments.  Instead, Plaintiff has demonstrated merely a disagreement over medical care. <u>See</u> Ex. To Complt., at 23.  Accordingly, the Complaint fails to state a claim for violation of Plaintiff's right under the Eighth Amendment to adequate medical care.

15

V.  CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(e), for failure to state a claim.  If Plaintiff can overcome the deficiencies noted herein, he may file a motion to re-open and file a proposed amended complaint within 30 days of this Opinion and the related Order.[3]

An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: September 14, 2011

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.